# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 1959 |
| | ) |
| THOMAS ALLMAN, | ) Wayne R. Andersen |
| | ) District Judge |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

The case is before the court on a motion to vacate the sentence of petitioner, Thomas Allman, pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the court denies this motion.

## BACKGROUND

In September of 1998, brothers Thomas and Michael Allman (hereinafter "Thomas" and "Michael") were charged in a superceding indictment with conspiring to possess, transport and ship by U.S. Mail a .223 caliber Olympic Arms Model CAST semi-automatic pistol when each was, and was known to the other as, a prior convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 371. Each brother was also charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), possessing a banned assault weapon in violation of 18 U.S.C. § 922(v)(1), and causing the mailing of a banned assault weapon in violation of 18 U.S.C. §1715. The indictment alleged that Thomas had obtained a gun through a straw purchaser in Mesa, Arizona and then sent it - broken down into parts in two separate packages - via U.S. Mail to his brother Michael in Chicago, Illinois. Prior to this time, the Allman brothers had extensive criminal histories, including felony convictions for violent crimes. Much of their criminal conduct and convictions stemmed from jointly undertaken

activity.

Initially, both brothers plead not guilty. In 1999, Thomas's second attorney in the case withdrew, and the Court appointed an Assistant Federal Defender. On May 19, 2000, the Court denied the brothers' motion to suppress evidence containing postal parcels which had contained the firearm components. Shortly thereafter, Michael pled guilty to a modified group of charges.

Thomas then discussed the possibility of pleading guilty with his mother, his brother, and his counsel. After these conversations, and perhaps in part due to his mother's strong desire that he plead guilty, Thomas pled guilty to conspiring to possess, transfer and mail a semi-automatic assault weapon as a felon, in violation of 18 U.S.C. §§ 922(g)(1), 371 and 1715. As part of his plea agreement, Thomas waived his right to collaterally attack his conviction by bringing an action under 28 U.S.C. § 2255. However, this waiver did not extend to claims of involuntariness and ineffective assistance of counsel in the negotiation and entry of the waiver.

In the wake of the plea agreement, Thomas grew discontented with his third attorney. This led to the appointment of a fourth counsel for Thomas and his subsequent motion to withdraw his guilty plea on grounds of involuntariness. This Court denied that motion on October 18, 2001. Subsequently, Thomas was sentenced to 144 months imprisonment, consistent with the terms of the plea agreement.

Thomas then appealed to the Seventh Circuit on the issue of this Court's May 19, 2000 denial of his motion for the suppression of evidence. While this appeal was pending, Thomas moved *pro se* to withdraw the appeal and discharge his fourth counsel, who he claimed failed to address all the issues that he wanted to raise on appeal. In response, the Seventh Circuit instructed him to send them a written list of his issues by April 14, 2003. Thomas did not comply, and on May 7, 2003, the

2

Seventh Circuit denied his motion to withdraw his appeal and terminate counsel, inviting him to pursue whatever post-conviction remedies might be available. On July 15, 2003, the Seventh Circuit issued an opinion affirming this Court's judgment. Three days later, but prior to the Seventh Circuit's mandate, Thomas filed *pro se* a supplement to his appeal before the Seventh Circuit, which was denied by that court on July 29, 2003. This Court allowed Thomas to submit the issues he raised in his *pro se* appellate filings as part of his 28 U.S.C. § 2255 petition.

## STANDARD OF REVIEW

Collateral relief under 28 U.S.C. §2255 is limited to situations in which there is "an error of law that is jurisdictional, constitutional or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994). Claims of such errors are considered only if they are "raised in [a] procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989).

A *pro se* plaintiff has stated a valid claim if the facts alleged would create a right to recover a remedy under any theory. *U.S. ex rel Sharon Lang v. Northwestern University*, 2005 WL 670612, 3 (N.D. Ill.) (citing *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). "It is a well-settled law of [The Seventh] Circuit that *pro se* complaints are to be liberally construed." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). However, the Court will deny a §2255 petition without a hearing if the allegations are vague, conclusory, or incredible, or the record before the Court can resolve claims without the need for a hearing. *Rodriguez v. United States*, 286 F.3d 972 (7th Cir. 2002).

## DISCUSSION

Thomas sets forth a myriad of reasons he is entitled to relief. Essentially, however, they are all distilled down to claims of ineffective assistance of counsel. We will first discuss Thomas's

3

burden in establishing ineffective assistance of counsel. We will then turn to the claims Thomas makes regarding his third attorney, who represented him during the entry of his guilty plea, which contained a waiver of his right to bring the present action except as it relates to ineffective assistance of counsel or involuntariness in the negotiation and entry of plea agreement itself. Finally, we will address the claims Thomas sets forth concerning his fourth counsel.

## I. Petitioner's Burden in Asserting Ineffective Assistance of Counsel Claims

Thomas bears the burden of establishing ineffective assistance of counsel. To do so, he must show (1) that his attorney's representation fell below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000), citing, *Strickland v. Washington*, 466 U.S. 668, 688-95 (1984). Typically, the first prong of the test for ineffective assistance of counsel is called the "performance prong" and the second prong is called the "prejudice prong."

The legal standards surrounding the two prongs are well-settled. With regard to the performance prong, the [petitioner] must identify the specified acts or omissions that form the basis for his claim." *United States v. Moya-Gomez*, 860 F.2d 706, 763-764. Once these acts or omissions are identified, we must "determine, in light of all the circumstances, if the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Given the wide range of competent assistance, and the endless tactical decisions faced by counsel and client alike, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

4

Prejudice may only be found if the court's confidence in the outcome of the proceeding is undermined as a result of counsel's performance. *See Morris v. United States*, 264 F.3d 726, 727 (7th Cir. 2001). Unless there is a reasonable probability that the proceedings would have a different result, no finding of prejudice is warranted. *Strickland*, 466 U.S. at 694. We define "reasonable probability" as that which would be "sufficient to undermine confidence in the outcome." *Id.* As such, the essence of the prejudice inquiry is any effect counsel's performance had on a matter that was outcome determinative to the case.

In order to establish that his attorney was ineffective in relation to the negotiation and entry of the plea agreement, Thomas must meet the performance and prejudice prongs laid out above. First, Thomas has to show that his counsel performed in a deficient manner in the plea process. *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). Second, Thomas must show that his lawyer's actions were a decisive factor in his decision to plead guilty. *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). Additionally, Thomas must support his allegations with more than vague and conclusory allegations. *Unites States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989) (finding no ineffective assistance of counsel when petition is not supported by any evidence other than petitioner's "bare allegations").

## II.     Petitioner's Claims Against His Third Counsel

Thomas alleges that his third attorney provided ineffective assistance of counsel because he: (1) pressured Thomas to make the plea deal; (2) had a conflict of interest in pre-plea discussions; (3) had a conflict of interest in representing Thomas because he was supposedly related to the victim of a crime for which Thomas was a suspect in 1980; and (4) failed to investigate details regarding the postal parcels discussed above.

Thomas fails to meet either prong of the *Strickland* test regarding his claim that his attorney pressured him into pleading guilty. The threshold question of whether Thomas's third counsel improperly coerced him into pleading guilty ends the inquiry. Thomas complains that his counsel urged him to plead guilty and shared with him a letter penned by Thomas's mother stressing the merits of a guilty plea. No allegation was made that this was a fake letter or that the attorney told Thomas's mother what to write. Essentially, Thomas objects to the fact that his counsel allowed family members to communicate their feelings regarding the plea and provided Thomas with an attorney's professional assessment of the situation. This is not ineffective assistance of counsel. Counsel is not precluded from assisting Thomas in weighing the factors relevant to a decision to plead guilty. Thomas's chances of success at trial, his sentencing options were he to go to trial, and the availability of family support upon his release from prison are all relevant to his decision to plead guilty to an offense. We note that no allegation was made that Thomas's third attorney prevented him from going to trial or otherwise interfered with his constitutional rights.

Thomas's allegations that his third counsel had a conflict of interest are not supported by the record. Here, Thomas claims that his third counsel is related to the victim of a crime for which he was once a suspect. The only support advanced for this argument is the exceedingly common last name shared by counsel and a crime victim. Additionally, Thomas claims his counsel's decision to transmit a letter to Thomas from his mother constituted a conflict of interest. This claim likewise lacks merit. Nothing prohibited counsel from sharing a letter from a concerned family member with his client.

Thomas's last allegation relates to his third counsel's investigation of the postal parcels containing the broken-down firearm that gave rise to his indictment. Petitioner claims that counsel

failed to investigate discrepancies between the weights of the postal parcels. The government argues that this issue was waived. This may be so. However, since any credible challenge to the government's evidence was relevant to Thomas's decision to plead guilty and execute a waiver of his rights to bring an action under §2255, we will address the issue. Much like Thomas's claim that two exceedingly common last names amounted to a conflict of interest, this claim is based on vague and conclusory allegations. The claimed discrepancy in parcel weight could refer to the two separate parcels, each of which contained separate parts of the firearm. Such a discrepancy in no way calls into question the government's case. Thomas could also be referring to a weight differential in a package between the time of shipping and delivery. While such a fact pattern could impact the government's case, no support has been given for such an allegation.

### III. Petitioner's Claims Against His Fourth Counsel

The Seventh Circuit has repeatedly stated that waivers of collateral attacks under §2255 are generally enforceable. *See Bridgeman v. United States,* 229 F.3d 589, 591 (7th Cir.2000); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir.2000). A waiver of a right to file a petition under section 2255 pursuant to a plea agreement is enforceable "if it is knowing and voluntary and if the defendant cannot establish a claim of ineffective assistance of counsel in connection with negotiating the agreement." *Mason,* 211 F.3d at 1069. As such, since we disposed of Thomas's allegations relating to ineffective assistance of counsel prior to the date he entered into the plea agreement, his remaining claims are waived. Additionally, Thomas likely waived any claims not raised before the Seventh Circuit.

Nevertheless, we will briefly address Thomas's allegations against his appellate counsel. Thomas faults his appellate counsel for not appealing this Court's denial of his motion to withdraw

his guilty plea. Once this Court accepts a guilty plea, it will grant a motion to withdraw the guilty plea only if the defendant can show a "fair and just reason." Fed. R. Crim. P. 11(d). It is well established, however, that a defendant's change of heart regarding a guilty plea does not constitute a "fair and just" reason to withdraw the plea. *See, e.g., United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999). For the reasons set forth in this Court's October 18, 2001 Opinion, we do not feel Thomas had a right to withdraw his guilty plea. However, Thomas insists that he had an absolute right to withdraw his plea. This is an incorrect statement of law. Thomas was in no way prejudiced by his counsel's failure to appeal this Court's denial of his motion to withdraw his guilty plea because such an appeal would have been meritless.

## CONCLUSION

For the foregoing reasons, this Court denies the petition for writ of habeas corpus [1-1]. It is so ordered.

Wayne R. Andersen
United States District Court

Dated: February 3, 2006